**Robert S. ADAMS, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

No. 90–5448.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1990.

Decided Jan. 8, 1991.

Richard E. Wentz (argued), Robinson, Arnzen, Parry & Wentz, Covington, Ky., for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., John S. Osborn, III, Asst. U.S. Atty., Office of U.S. Atty., Lexington, Ky., Sharon F. Adams, John Jarrett (argued), Department of Health & Human Services, Atlanta, Ga., for defendant-appellee.

Before KRUPANSKY, GUY, and SUHRHEINRICH, Circuit Judges.

PER CURIAM.

Plaintiff, Robert Adams, appeals the district court's order affirming a decision by the Secretary of Health and Human Services (Secretary). The Secretary found that Adams was overpaid Social Security retirement benefits for the years 1985, 1986, and 1987. Adams began receiving Social Security retirement benefits in 1985, but he continued working as a traveling salesman, earning income in amounts sufficient to reduce his Social Security benefits. Adams does not contest the reduction, but the amount of the reduction. It is Adams' contention that he is "self-employed" and not an "employee." The distinction is a significant one because, if construed to be self-employed, only his net earnings after the deduction of business expenses would

be used as an offset against his retirement benefits.

The district court concluded that substantial evidence supported the Secretary's decision that Adams was an employee. We agree and affirm.

## I.

▮ Prior to retirement in 1985 at the age of sixty five, Adams worked for Bowman Distribution (Bowman) as a traveling salesman. After his retirement, he continued to work for Bowman as a travelling salesman. What differences, if any, existed between his job on a day-to-day basis before retirement and after retirement are not set forth in the record. We do know, however, that the work performed for Bowman after 1985 was pursuant to a salesman's agreement, whereby Adams agreed to devote his best efforts to the performance of duties for the company; to give proper time and attention to furthering the company's business; to confine his activities to the classifications of customers and territory assigned to him; to refrain from soliciting or accepting orders from other classifications of customers or territories; and to comply with all rules, regulations, and instructions contained in the sales manual and official bulletins issued by Bowman. He further agreed that he would not enter into or engage in any business that competes with Bowman's business, and that he would bear responsibility for all expenses in connection with his sales activities, including but not limited to travel, automobile, supplies, and telephone.

Bowman filed regular W-2 forms for Adams in the years 1985, 1986, and 1987, showing earnings from commission sales of $18,645.39, $20,605.32, and $21,751.95, respectively. For the years in question, Adams filed a Schedule C with his income tax returns, indicating expenses incurred of $3,510 in 1985, $4,002 in 1986, and $7,126 in 1987. For purposes of the Social Security benefits offset, Adams contends that his income for 1985, 1986, and 1987 should be reduced by the amounts he claimed on Schedule C as business expenses.[1] There is no dispute that if Adams were self-employed he could have deducted his business expenses from his gross wages for purposes of determining the proper offset against Social Security benefits. Our first task, then, is to determine whether substantial evidence supports the Secretary's determination that Adams is not self-employed. We first look to the Secretary's regulations that address the issues of self-employment status:

(c) *Factors that show self-employed status.* Some aspects of a job arrangement or business venture that may show you are self-employed are as follows:

(1) You make a profit or suffer a loss.

(2) You are hired to complete a certain job and if you quit before the job is completed you may be liable for damages.

(3) You work for a number of persons or firms at the same time.

---

1. Social Security benefits are reduced as a result of any additional income earned while collecting benefits. For the purposes of Social Security excess earnings, the distinction between an employee or one who is self-employed has significant ramifications. Specifically, wages are calculated differently for the two groups. Employee Expenses, 20 C.F.R. § 404.1045, provides:

   Amounts that your employer pays you specifically—either as advances or reimbursements—for traveling or for other ordinary and necessary expenses incurred, or reasonably expected to be incurred, in your employer's business are not wages. The employer must identify these travel and other expenses either by making a separate payment or by specifically stating the separate amounts if both wages and expense allowances are combined in single payment.

Bowman did not make separate payments to Adams for his travel and related expenses and therefore all of the money Bowman paid Adams constituted wages. In contrast, the regulations allow self-employed individuals to reduce their gross income by their business expenses before calculating their excess earnings. See 20 C.F.R. §§ 404.428 and 404.429. The Appeals Council did find that Bowman separately identified a portion of the business expenses Adams initially deducted from his gross income. As a result, the council allowed him to deduct these expenses from his wages for Social Security purposes. This portion of claimant's deduction is not at issue.

(4) You advertise to the general public that you are available to perform services.

(5) You pay your own expenses and have your own equipment and work place.

20 C.F.R. § 404.1007(c). Although Adams would appear to meet criterion (5), he does not meet the other criteria. Of particular significance is the fact that he has committed himself to work exclusively for Bowman. In this regard, the Internal Revenue Service (IRS) issued a ruling in 1960 involving another of Bowman's salesmen. In pertinent part, this ruling holds:

Information furnished by Mr. Goodwin indicates that his entire business activity is the solicitation of orders for the Company from the requisite types of customers. If this is the case he should be considered an employee of the Company for purposes of the taxes imposed under the Federal Insurance Contributions Act....

The Social Security Act, 42 U.S.C. § 410(j), defines the term employee. Subsection (3)(D) specifies that

any individual ... who performs services for remuneration for any person—

....

(D) as a traveling or city salesman ... engaged upon a full-time basis in the solicitation on behalf of, and the transmission to, his principal (except for sideline sales activities on behalf of some other person) of orders from wholesalers, retailers, contractors, or operators of hotels, restaurants, or other similar establishments for merchandise for resale or supplies for use in their business operation....

The accompanying regulation, 20 C.F.R. § 404.1008(e), provides additional explanation:

(e) *Traveling or city salesman.* The main activity of a traveling or city salesman is taking orders for merchandise for another person or firm.... The salesman sells merchandise to others for resale or for use in their own business. We consider you a traveling or city salesman if most of your work is done for a single person or firm even though you have incidental sideline sales activities. However, you are not an employee under this paragraph as to those sideline sales. If you take orders for a number of persons or firms as a "multiple line" salesman, you are not a traveling or city salesman.

Adams never argues that he is a "multiple line" salesman within the meaning of the statute. In fact, during the hearing before the ALJ, Adams stated that he worked only for Bowman. The record does not indicate whether Adams worked full or part-time for Bowman, only that Adams had no prearranged work hours. Although the Salesman's Agreement states that Adams is an independent contractor, all other parts of the agreement place Adams' relationship with Bowman squarely within both the words and contemplation of the statute and regulation. In the section outlining Adams' duties, the Agreement states that "[t]he Salesman is authorized to solicit orders[ ] from the classifications of customers assigned to him[ ]...." It also states that "[t]he Salesman further agrees that during the term of this Agreement he will not, either directly or indirectly, enter into or engage in any business which competes with the Company's business." The agreement also specifies that Adams' compensation will be by sales commission. Thus, there was substantial evidence to find that Adams was an employee of Bowman within the meaning of the Social Security statute.

## II.

■ Adams alternatively argues that there is no rational basis for treating him differently from self-employed individuals "merely because he is defined as an employee under the Social Security Act," and, thus, the regulation is invalid. In analyzing this argument, our starting point is the proposition that "[a] regulation is invalid [only] if in enacting it 'the Secretary has exceeded his statutory authority' or 'the regulation is arbitrary and capricious,' and therefore fails to fulfill the intent of the statute." *Davis v. Secretary of Health & Human Servs.,* 867 F.2d 336, 338 (6th Cir.

1989) (quoting *Herweg v. Ray*, 455 U.S. 265, 275, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982)).

Since the Secretary is following a congressional mandate when Social Security benefit payments are reduced as a result of excess wages earned, there can be no serious argument made that the Secretary's regulations exceed his statutory authority. In this regard, we note that several circuits have reviewed the regulation in question and upheld it. *Greenhow v. Secretary of Health & Human Servs.*, 863 F.2d 633 (9th Cir.1988); *Davis v. Bowen*, 840 F.2d 822 (11th Cir.1988); *Colby v. Harris*, 622 F.2d 644 (2d Cir.), *cert. denied*, 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed.2d 130 (1980) (affirming for reasons articulated in *Colby v. Harris*, 489 F.Supp. 461 (S.D.N.Y.1980)).

Although we can appreciate Adams' argument that there is little practical difference between the day that he puts in and the day worked by a self-employed traveling salesman, that comparison does not compel the conclusion that the Secretary's regulation is arbitrary and capricious. We note several factors that justify the difference in treatment mandated by the regulations. To begin with, Adams is receiving Social Security credit for the gross earnings Bowman reports. In other words, the amount of Social Security retirement benefits to which he is entitled actually increases as a result of his being treated as an "employee." It is true that the increase is a nominal one, but nonetheless it would not be rational to use gross wages for the purpose of computing benefits and net wages for the purpose of computing deductions from benefits.

It is also relevant that Adams, to some degree, is the victim of the very agreement that he negotiated with Bowman. Although the record is silent as to the circumstances under which this agreement was negotiated, it is clear that the drafter's prime purpose was other than to ensure that Adams met the criteria for being a self-employed salesperson. It would appear that the primary intent in the agreement, which refers to Adams as a "independent contractor," was to protect Bow-

man from tort or contractual liability that might be incurred as a result of Bowman's actions. It would also serve to insulate the company from the requirements of workers' compensation, continuing pension contributions, and myriad other benefits that might enure to a regular employee. If indeed Adams is nothing other than self-employed, it appears that it would be easy enough to restructure his relationship with Bowman to meet the criteria used in making the determination of self-employment status. Under the present circumstances, in which Bowman makes FICA contributions on behalf of Adams, Adams derives increased retirement benefits as a result of these contributions, and Adams has limited his services exclusively for the use and benefit of Bowman, we are constrained to hold that the Secretary properly computed the offset to be made against his retirement benefits.

AFFIRMED.