**UNITED STATES of America, Appellee,**

v.

**Anthony COLLINS, Defendant–Appellant.**

**No. 692, Docket 91–1471.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 8, 1992.
Decided Feb. 25, 1992.

Marjorie M. Smith, New York City (The Legal Aid Soc., of counsel), for defendant-appellant.

Miguel A. Estrada, Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., James B. Comey, Asst. U.S. Atty., S.D.N.Y., of counsel), for appellee.

Before MINER, ALTIMARI and MAHONEY, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Anthony Collins appeals from a judgment of conviction, entered in the United States District Court for the Southern District of New York, following a jury trial before Judge Robert P. Patterson, Jr. Collins was convicted of dealing in firearms without a federal firearms license, in violation of 18 U.S.C. § 922(a)(1), and of receiving and possessing a sawed-off rifle, in violation of 26 U.S.C. § 5861(d). On appeal, Collins contends, among other things, that the district court committed plain error by failing to charge the jury that it could only convict Collins of unlawful dealing in firearms if it found that he acted *willfully*. While the government concedes that the district court erred by omitting a willfulness requirement from its charge on the § 922(a)(1) count, it argues that this error was harmless.

For the reasons set forth below, we affirm the judgment of conviction.

## BACKGROUND

On January 28, 1991, Anthony Collins was charged by indictment with three separate offenses involving firearms: Count One charged him with conspiracy to violate the federal firearms laws by possessing firearms and dealing in firearms without a license, in violation of 18 U.S.C. § 371; Count Two charged him with dealing in firearms without a federal firearms license, in violation of 18 U.S.C. § 922(a)(1); and Count Three charged him with receiving and possessing a sawed-off rifle, in violation of 26 U.S.C. § 5861(d). A jury trial was held in the United States District Court for the Southern District of New York in February 1991.

At trial, the government introduced the testimony of two undercover agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") and of a confidential government informant, James Barnes, as well as tape-recordings of some of the conversations that these agents had with the defendant. According to this testimony, from February 1990 through August 1990, Collins repeatedly met with undercover ATF agents outside his apartment building, and in his neighborhood, to complete or to arrange various gun sales. During one such meeting, Collins sold a Colt .45 revolver to two ATF agents, Agent Donini and Agent Mulham, for $900. As Collins showed the agents the revolver, he explained that he had obliterated its serial number, as was his general practice. Collins stated: "[T]hat's what I always do, take 'em off."

At another meeting, Collins sold Agent Mulham a .38 caliber Smith & Wesson revolver for $1,100. While Agent Mulham was inspecting the weapon, Collins noted that the gun was "oily" because he had cleaned it to ensure that his fingerprints had been removed. Shortly after the sale of the Smith & Wesson, Collins again met with Agent Mulham and sold him a sawed-off U.S. Carbine .30 caliber rifle and a .9

millimeter Kurz semiautomatic pistol for $1,900. As part of the transaction, Collins agreed to sell Mulham five .9 millimeter pistols at a later date for $650.00 apiece.

The government presented additional evidence that a number of other weapons sales were made by Collins' brother-in-law, Jerome Blash, in or around Collins' basement apartment. The agents also testified that Collins had informed them that he was the rightful owner of the weapons that Blash had sold to them.

In response, Collins took the stand and charged that the government had entrapped him. He claimed that the government's informant, Barnes, was the actual source of the firearms that Collins had sold to the agents. Additionally, Collins contended that Barnes had repeatedly asked him to sell the weapons and, when Collins finally agreed, coached him on what to say to buyers.

The jury ultimately found Collins guilty on Counts Two and Three. As a result of a jury deadlock on Count One, the judge declared a mistrial on that charge. The district court calculated Collins' offense level for the two counts on which he was found guilty to be 18 and concluded that Collins' criminal history category was I, making the applicable sentencing range 27 to 33 months. The district court sentenced Collins to 27 months imprisonment, two years of supervised release and imposed $100 in mandatory special assessments.

This appeal followed.

## DISCUSSION

### I. *Propriety of the Charge*

On appeal, Collins contends—and the government concedes—that the district court erred by failing to charge the jury that it was required to find that Collins acted *willfully* before it could find him guilty of dealing in firearms without a license under 18 U.S.C. § 922(a)(1). Although Collins did not object to the charge as given, he now claims that the absence of a "willfulness" instruction in the court's charge on unlawful dealing constituted plain error. We disagree.

On Count Two of the indictment, Collins was convicted of violating 18 U.S.C. § 922(a)(1), which prohibits "any person ... except a ... licensed [firearms] dealer, [from engaging] in the business of ... dealing in firearms." As written, this subsection contains no *scienter* requirement. Therefore, the district court, following the government's requested instruction, charged the jury that "the government is not required to prove that Mr. Collins knew that a license was required, nor is the government required to prove that the defendant had knowledge that he was breaking the law."

The government now concedes, however, that an amendment to the penalty provision accompanying this section has added a willfulness requirement to the underlying offense. The Firearms Owners' Protection Act, enacted in 1986, amended 18 U.S.C. § 924(a)(1)(D), the penalty provision applicable to the crime of unlawful dealing in firearms, to provide:

> Whoever ... *willfully* violates any other provision of this chapter, shall be fined not more than $5,000, imprisoned not more than five years, or both, and shall become eligible for parole as the Parole Commission shall determine.

(emphasis added). Prior to the enactment of the 1986 Act, many firearms crimes were essentially strict liability offenses. Because Congress recognized that the lack of a *mens rea* requirement accompanying these offenses could result "in severe penalties for unintentional missteps," *see* 132 Cong. Rec. S5350 (daily ed. May 6, 1986), it added the willfulness requirement to § 924(a)(1)(D). Thus, it is apparent that by amending § 924(a)(1)(D), Congress was in fact adding the element of willfulness to the accompanying offenses, such as § 922(a)(1). *See, e.g.,* H.R.Rep. No. 495, 99th Cong., 2d Sess. 26 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 1327, 1352 ("House Report"); *see also* 132 Cong. Rec. S5350 (daily ed. May 6, 1986) (amendment requires proof of "willful" violation for certain prosecutions). Accordingly, the district court erred by failing to charge the jury that willfulness was an element of the

crime. We must therefore consider whether this error requires reversal of Collins' conviction on Count Two.

It is a "bedrock, 'axiomatic and elementary' [constitutional] principle," that a defendant's conviction may not stand if it is based on an evidentiary presumption that essentially "reliev[es] the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985); *see In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Collins claims that the district court established such an evidentiary presumption by failing to instruct on willfulness. In opposition, the government contends that the district court's omission was merely harmless error.

It is well-established that "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). An error committed at trial will be considered harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Recently, the Supreme Court, in *Yates v. Evatt,* — U.S. —, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), elaborated on the harmless error rule as applied to jury instructions. *Yates* instructs that a court reviewing a claim of harmless error in a jury charge must examine (1) the evidence the jury considered in rendering its decision and (2) the probative force of the evidence against the probative force of the presumption standing by itself. *See id.* 111 S.Ct. at 1893. Basically, an appellate court "must approach [a harmless error inquiry in this context] by asking whether the force of the evidence presumably considered by the jury in accordance with the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same

in the absence of the presumption." *Id.* at 1894.

Here, the district court, through its failure to charge, presumed that willfulness existed. Accordingly, applying the two step inquiry set forth in *Yates,* we must conclude whether, based on the evidence, the jury's verdict would have been the same if the judge properly instructed that willfulness was an element of the offense of unlawful dealing in firearms.

We begin our analysis by examining the meaning of the willfulness requirement contained in the statute. Collins contends that the addition of the element of willfulness to § 924(a)(1)(D) requires the government to prove more than just the defendant's general knowledge that he or she is violating the law. According to Collins, for a defendant to act willfully under § 924(a)(1)(D), he or she must have specific knowledge of the statute that he or she is violating as well as a specific intent to violate the provision at issue. More precisely, Collins argues that in order to obtain a conviction on the § 922(a)(1) offense, the government was required to prove beyond a reasonable doubt that he was aware of the license requirement and intentionally disregarded it. To support his claim, Collins refers to the House Report accompanying the 1986 Firearms Owners' Protection Act, which criticizes the willfulness requirement contained in the Senate's bill, S. 49. The House Report states:

> It appears that the intent of the authors of the "willfulness" requirement of S. 49/H.R. 945 is that the prosecution have to prove that the defendant knew the details of the law, understood that his conduct would violate the law, and intentionally set out to violate the law. This would constitute an almost impossible, and almost unprecedented burden on the prosecution.... The Committee believes that ... a person who engages in the business of selling hand grenades or machine guns should not escape prosecution solely on the grounds that the government cannot produce witnesses to whom the defendant admitted knowledge that such conduct requires a federal li-

cense, and a determination to violate that law.

House Report at 11, *reprinted in* 1986 U.S.Code Cong. & Admin.News at 1337. In essence, the House Judiciary Committee rejected the adoption of a willfulness requirement, or at least a willfulness requirement that was narrowly drawn. Ultimately, however, the bill Congress passed contained a willfulness requirement. Thus, Collins contends that notwithstanding the House Judiciary Committee's criticisms of the Senate bill's willfulness provision, the Act as passed contained a very narrow and precise willfulness requirement. We cannot agree with this assessment.

First, we note that remarks made during the debates on the Senate floor indicate that the willfulness provision contained in S. 49 was added to avoid penalizing individuals who inadvertently violated the firearms provisions of the Gun Control Act of 1968. For example, Senator Hatch, a sponsor of the Act, stated, "We need to redirect law enforcement ... towards willful firearm law violations that will lead to violent crime; for example selling stolen guns or selling firearms to prohibited persons." 131 Cong. Rec. 18178; *see also* 131 Cong. Rec. 18165–166 (1985) (remarks of Sen. Abdnor). Moreover, another primary sponsor of the bill noted, "The aim of the Firearms Owners Protection Act is to redirect law enforcement toward the kind of transaction most likely to be a factor in violent firearms crime. In other words, we have to stop going after the guy who transposes a number in a zip code, and go after the dealer who is knowingly selling stolen guns, or knowingly selling to prohibited persons." 132 Cong. Rec. S5358 (daily ed. May 6, 1986) (remarks of Sen. McClure). Since there was no Senate Report to accompany the bill, we look more closely at statements such as these that were made on the Senate floor. These types of statements indicate that the willfulness requirement was aimed at ensuring that blameless individuals would not remain strictly liable for innocent violations of various firearms provisions.

Second, it is clear that based on the House Report, the House Judiciary Committee believed that if a willfulness provision were included in the Act, it should be read broadly. *See* House Report at 11, 26, *reprinted in* 1986 U.S.Code Cong. & Admin.News at 1337, 1352. Indeed, a compromise on the willfulness provision can be inferred, since the House Report initially rejected its inclusion in the Act altogether. Third, when ATF, one of the primary bureaus responsible for enforcing the Act, submitted comments on S. 49 to the House Judiciary Committee, it noted that a strict reading of the willfulness provision "would make it extremely difficult to successfully prosecute many cases, *e.g.*, a non-licensee's illegal interstate firearms purchases." House Report at 19, *reprinted in* 1986 U.S.Code Cong. & Admin.News at 1345. The importance of the ATF's views is evidenced by the Judiciary Committee's decision to append the ATF's statement to the Committee Report. Based on these expressed concerns and on the floor debate in the Senate, we believe that the element of willfulness now contained in § 922(a)(1) was meant to be read broadly to require only that the government prove that the defendant's conduct was knowing and purposeful and that the defendant intended to commit an act which the law forbids.

 Thus, we now consider whether a proper charge on willfulness would have altered the jury's verdict. At trial, Collins presented an entrapment defense, and in so doing, conceded the elements of the charged crimes. Collins' basic defense was that the government's informant, Barnes, had goaded him into participating in the gun transactions. For an entrapment defense to be successful, a jury must conclude not only that the government presented the defendant with the opportunity to commit the charged crime, but also that the defendant was not predisposed to commit the offense. *See Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *see also Hampton v. United States,* 425 U.S. 484, 488–89, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976). In this case, the jury rejected Collins' entrapment defense by finding him guilty on Counts Two and Three. Thus, the jury

essentially concluded that Collins was ready and willing to commit the charged crimes when approached by the government's informant. We believe that the jury's rejection of the defense, by itself, indicates that even if the willfulness instruction had been given, Collins would have been convicted on Count Two. Apart from this, however, evidence that Collins repeatedly obliterated serial numbers from the guns he sold and wiped fingerprints off guns when he sold them, demonstrates that Collins understood that his firearms sales violated the law. In sum, we conclude that the government established Collins' willfulness beyond a reasonable doubt, rendering the district court's failure to include willfulness in the charge merely harmless error.

## II. *Sufficiency of the Evidence*

■ Collins next contends that there existed insufficient evidence to sustain his convictions for illegal receipt and possession of a sawed-off rifle and dealing in firearms without a license. Essentially, Collins argues that the government failed to disprove his entrapment defense and, as a result, the case against him was legally insufficient. We disagree.

■ A defendant challenging the sufficiency of the evidence supporting his or her conviction bears a heavy burden. *See United States v. Medina,* 944 F.2d 60, 66 (2d Cir.1991). The defendant must show that even if all possible inferences are drawn in favor of the government, no reasonable jury "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see Medina,* 944 F.2d at 66; *United States v. Rodriguez,* 943 F.2d 215, 219 (2d Cir.1991). Upon viewing the evidence in the light most favorable to the government, it is clear that Collins' claim of entrapment must fail.

As noted above, "a valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews,* 485 U.S. at 63, 108 S.Ct. at 886;

*see Hampton,* 425 U.S. at 488–89, 96 S.Ct. at 1649; *United States v. Chin,* 934 F.2d 393, 398 (2d Cir.1991). Collins asserts that the government failed to produce any evidence that he would have engaged in weapons sales if Barnes, the government's informant, had not prodded him to do so. However, this contention was clearly negated by the government's proof at trial. During the trial, the government played tape-recordings of conversations between Collins and ATF agents, in which Collins discussed a number of other firearms sales—such as sales to various drug dealers—conducted independently of his association with Barnes. Moreover, as previously discussed, Collins explained to the ATF agents that he was the rightful owner of certain weapons that his brother-in-law had sold to them. This contradicts Collins' claim at trial that he obtained weapons solely through Barnes. Additionally, Collins' professed skill at sawing-off shotguns, as well as his standard practice of obliterating serial numbers on weapons and wiping his fingerprints from guns prior to sale, indicates that he had extensive experience in conducting illegal weapons sales. It is clear, therefore, that a reasonable jury could easily have dismissed Collins' entrapment defense.

## III. *Sentencing Guidelines § 2K2.2*

■ Finally, Collins challenges the district court's application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), contending that the court erred by calculating the base offense level for his 26 U.S.C. § 5861(d) possession conviction using U.S.S.G. § 2K2.2—the provision applicable to unlawful trafficking offenses—rather than using U.S.S.G. § 2K2.1—the provision applicable to unlawful possession offenses. Based on these alleged errors, Collins argues that his base level should have been calculated at 16 (yielding a guideline range of 21–27 months imprisonment) rather than 18 (yielding a guideline range of 27–33 months imprisonment).

Collins' convictions resulted from offenses occurring in the summer of 1990.

Because use of the November 1990 Guidelines, which were in effect at the time of sentencing, would have resulted in an increase in Collins' base offense level, the district court sentenced Collins on the basis of the post-November 1989 Guidelines, which were in effect at the time the crimes were committed. *See generally United States v. Keller*, 947 F.2d 739, 740 (5th Cir.1991); *United States v. Stephenson*, 921 F.2d 438, 440–41 (2d Cir.1990).

Under § 2K2.1 as it then read, a court sentencing an offender on an unlawful receipt, possession or transportation of a firearm count, was directed to apply § 2K2.2 if "the offense involved the distribution of a firearm or possession with intent to distribute ... [and] if the resulting offense level [upon application of that provision] is greater than that determined above." U.S.S.G. § 2K2.1(c)(1). Although the § 5861(d) offense for which Collins was convicted charged him only with "possess[ion of] a sawed-off rifle," it is clear that because Collins eventually sold this rifle to undercover agents, the district court properly surmised that Collins had possessed the weapon *with intent to distribute. See, e.g., United States v. Dennis*, 926 F.2d 768, 769 (8th Cir.1991) (per curiam). Additionally, it is apparent that Collins' base offense level calculated under § 2K2.2 was greater than it would have been if calculated under § 2K2.1. If the district court had applied § 2K2.1, Collins' offense level would have been 16. In calculating Collins' offense level under § 2K2.2, however, the district court was permitted to add levels to Collins' base level of 16 if his distribution of other weapons furthered his 26 U.S.C. § 5861 violation. After conducting a hearing, the district court concluded that Collins' base offense level should be increased by two, because of Collins' involvement with the sale of five other weapons. As a result, the offense level calculated under § 2K2.2 was greater than it would have been if § 2K2.1 had been applied. Thus, based on the language and the intent of the applicable Guidelines provisions, we believe that the district court properly employed § 2K2.2 to determine Collins' sentence.

## CONCLUSION

We have examined each of Collins' remaining arguments and find them to be without merit. Thus, based on the foregoing, we affirm the judgment of conviction entered against Collins.