UNITED STATES of America

v.

**Thomas J. CAPOZZIELLO.**

**Crim. No. N–90–50 (WWE).**
**Civ. No. 3–93–66 (WWE).**

United States District Court,
D. Connecticut.

Aug. 19, 1993.

Keith Fleischman, Douglas Lavine, Asst. U.S. Atty., Bridgeport, CT, for U.S.

Gary Mastronardi, Bridgeport, CT, for Capozziello.

## RULING ON HABEAS CORPUS PETITION

EGINTON, Senior District Judge.

Petitioner Thomas J. Capozziello has moved pursuant to 28 U.S.C. § 2255 to vacate and set aside the sentence imposed by this Court for his conviction under 18 U.S.C. § 1951. He has also moved for stay of execution of sentence and continuation of bail, pending resolution of the motion to vacate. For the reasons stated below, all of these motions will be denied.

## BACKGROUND

In June, 1991, Petitioner was convicted of extortion under the Hobbs Act, Title 18 U.S.C. § 1951. The jury found that Petitioner had threatened the Franklin Construction Company, Inc. ("FCC") and Saybrook Point Marina Partnership ("SPMP") with economic loss by threatening to disrupt demolition work being performed at the Terra Mar Hotel in Old Saybrook, Connecticut unless and until he was paid a sum of money.

This court sentenced Petitioner to 27 months imprisonment. Petitioner appealed his conviction on the grounds that there was insufficient evidence to convict him and that the trial court had improperly stricken the testimony of his brother, Alfred Capozziello, and that if admitted, such testimony would have resulted in an acquittal. The Second Circuit affirmed the conviction on both grounds.[1] Petitioner then filed the instant petition on the grounds that he was denied effective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution. Specifically, Petitioner claims that his trial attorney's performance was unconstitutionally deficient because he failed to timely raise an entrapment defense.

The facts pertinent to petitioner's entrapment defense are as follows. Petitioner's company, the Bridgeport Wrecking Company ("BWC"), entered into a contract with FCC to demolish the Terra Mar Hotel. In December 1987, one of the owners of FCC, Louis Tagliatela, Sr., instructed BWC not to commence work at the site. Petitioner responded with vague threats that he might cause harm to Tagliatela's family if BWC was not permitted to proceed. Subsequently, petitioner ignored FCC's instructions and sent BWC crews to the Terra Mar Hotel site to begin demolition work. After completing approximately 80% of the job, BWC abandoned the site completely and permanently.

Petitioner thereupon sought payment not merely for the value of the work performed, but for the entire value of the contract. When FCC refused any payment whatsoever, petitioner resorted to self-help. Among various threats and intimidating acts against FCC's officers and employees, petitioner ordered the beating of Frank Cama, an employee of FCC.

After receiving this beating, a frightened Cama contacted an agent of the Bureau of Alcohol, Tobacco and Firearms, who referred him to the FBI. The FBI suggested that Cama tape record any conversations he

---

1. Despite the mandate issued by the Second Circuit, Petitioner remains free on bond.

might have with petitioner. Petitioner subsequently made a series of phone threats to Cama at the end of January and beginning of February 1988, which Cama recorded. No FBI agent supervised Cama concerning the making of the tapes, and Cama did not receive payment for surrendering the tapes. Unbeknownst to Cama, petitioner had invited his brother, Alfred Capozziello, to listen in on the last of these conversations.

At trial, the substance of these conversations constituted an important element of the proof supporting the government's case that petitioner had interfered with commerce by threats or violence. The defense regarded Alfred Capozziello as an important witness. Initially, however, defense counsel was uncertain of the precise relevance of Alfred Capozziello's testimony. After the close of the government's case, defense counsel called Alfred Capozziello to the stand. During Alfred's testimony, defense counsel indicated for the first time that he intended to use the testimony to prove an entrapment defense.

This court refused to permit an entrapment defense to be raised at such a late stage in the trial, because the Local Rules of Criminal Procedure require defense counsel to inform the government attorney in writing of defendant's intent to assert certain defenses, including entrapment, within fourteen days after the government has made its post-arraignment disclosures to the defense. Standing Order on Discovery for the District of Connecticut (B)(1).

## DISCUSSION

### Motion to Vacate and Set Aside the Sentence

■ The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), set forth the standard for determining whether a defendant has been denied his Sixth Amendment right to effective assistance of counsel. First, the defendant must demonstrate that counsel's conduct was deficient. Second, he must show that the deficient performance prejudiced the defense. Under the second-prong of the test, the defendant must show that "counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

■ The court's evaluation of defense counsel's performance must be "highly deferential." *Id.* at 689, 104 S.Ct. at 2065. In evaluating an attorney's performance, the court examines the totality of the circumstances to determine whether the attorney's performance was within the range of competence demanded of attorneys in criminal cases. The mere fact that counsel failed to recognize the factual or legal basis for a claim does not, in itself, constitute ineffective assistance of counsel. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986). Counsel's conduct cannot be judged with the benefit of hindsight. *United States v. Cruz,* 785 F.2d 399, 405 (2d Cir.1986).

■ Petitioner in this case states that his trial attorney's failure to raise an entrapment defense in a timely manner constituted ineffective assistance of counsel. In order to establish the defense of entrapment, the defendant must show that the government induced the defendant to commit the crime for which he is accused and that, absent government inducement, the defendant was not predisposed to commit the crime. *Mathews v. Unites States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988). The decision to present an entrapment defense involves substantial risks in that it necessitates the admission by the defendant of the intent to commit the crime charged. *United States v. Collins,* 957 F.2d 72, 76 (2d Cir.1992), *cert. denied,* —— U.S. ——, 112 S.Ct. 2285, 119 L.Ed.2d 210 (1992). Thus, a defendant who pleads not guilty while asserting the affirmative defense of entrapment carries the risk that the jury will dismiss both theories. In addition, the assertion of an entrapment defense opens the door to other evidence to demonstrate the defendant's propensity to engage in criminal conduct. *See United States v. Tutino,* 883 F.2d 1125, 1139 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1989).

■ In the instant case, defense counsel appeared to have discovered a possible entrapment defense only after the close of the

government's case. Whether this "discovery" was by design or circumstance, however, makes no difference to Petitioner's claim of ineffective assistance of counsel. As the court stated in *Cruz*, 785 F.2d at 405, trial counsel's performance may not be judged with the benefit of hindsight. Thus, the court will not view defense counsel as incompetent if he made a strategic decision not to raise an entrapment defense at the start of the trial, and later realized that his strategy was wrong.[2]

Further, the existence of a meritorious entrapment defense in this case is tenuous at best. First, there is no evidence that Cama was an agent of the government for purposes of an entrapment defense. "For entrapment to exist, the criminal design must originate with government officials, and it is they who must plant the criminal design in the mind of an innocent man." *United States v. Lee*, 694 F.2d 649, 653 (11th Cir.1983), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983). In this case, Cama was instructed to tape record his conversations with Petitioner only after he had been threatened and assaulted by Petitioner. Nothing in Alfred Capozziello's stricken testimony indicates that a federal agent designed Capozziello's crime. Thus, if defense counsel failed to timely recognize a potential entrapment defense, on the facts of this case, he cannot be viewed as incompetent.

Since petitioner cannot show that his trial counsel's performance was deficient, he has failed to satisfy the first prong of the *Strickland* test. Accordingly, there is no reason for the court to reach the second prong of the test. Petitioner's motion to vacate and set aside his sentence must be denied.

*Motion to Stay Execution of Sentence and Continue Bail*

Petitioner has moved to stay execution of sentence and continue bail until such time as the merits of the motion to vacate should be decided. Accordingly, the motion for stay of execution and continuation of bail must be denied as moot.

## CONCLUSION

For the reasons stated above, the Motion to Vacate Sentence and Set Aside Conviction and Sentence [1–1] is DENIED. The Motion for Stay of Execution and for Continuation of Bail is DENIED as moot.

---

**2.** The Supreme Court in *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 2587–88, 91 L.Ed.2d 305 (1986), recognized that defense counsel's failure to file a motion in accordance with procedural deadlines does not per se constitute ineffective assistance of counsel. Such a rule is consistent with reason and judicial economy: If trial counsel must assert every claim or defense, however remotely or tangentially relevant, lest he perhaps lose it to a procedural deadline and be branded an incompetent, the federal courts will be flooded with silly and frivolous claims. Despite the aura of finality and formalism surrounding the loss of the entrapment defense to the deadlines imposed by the local rules, counsel is not to be blamed for failing to assert a defense which did not at that time constitute part of his trial strategy.