**IT IS HEREBY ORDERED** that plaintiff's Motion for Partial Summary Judgment (filed August 18, 1993/Docket No. 16) is denied.

**IT IS FURTHER ORDERED** that defendant's Cross–Motion for Summary Judgment (filed October 26, 1993/Docket No. 26) is granted.

**UNITED STATES of America, Plaintiff,**

**v.**

**Odi Albert OTIABA, Defendant.**

**Crim. No. C3–94–50.**

United States District Court,
D. North Dakota,
Southeastern Division.

Sept. 7, 1994.

First Asst. U.S. Atty. Gary Annear, Fargo, ND, for plaintiff.

Richard D. Varriano, Moorhead, MN, for defendant.

**MEMORANDUM AND ORDER**

WEBB, Chief Judge.

The defendant is charged in a one count indictment with violating sections 922(e) and 924(a)(1)(D) of Title 18 of the United States Code. Section 922(e) provides, in pertinent part:

> It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped....

18 U.S.C. § 922(e). The penalty provision for this statute is located in section 924(a)(1), which provides:

> [W]hoever—
>
> (A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;

(B) knowingly violates subsection (a)(4), (a)(6), (f), (k), or (q) of section 922;

(C) knowingly imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922(1); or

(D) willfully violates any other provision of this chapter, shall be fined not more than $5,000, imprisoned not more than five years, or both.

18 U.S.C. § 924(a)(1). Subsection (D) of this statute is the penalty provision applicable to section 922(e).

The United States alleges that the defendant purchased tickets for a flight from Fargo, North Dakota, to Lagos, Nigeria. The defendant allegedly checked a suitcase at the Fargo airport for the airline to carry on the flight, without notifying the airline that the suitcase contained a firearm and ammunition, in violation of these two statutes.

The United States has now requested that the jury in this case be instructed as follows:

The mere delivery of a firearm to a common carrier, without giving notice to the carrier, is a violation of 18 U.S.C. § 922(e). It is not necessary for the government to prove that the defendant knew that notifying the carrier was required. It is sufficient if you find beyond a reasonable doubt that he knowingly delivered the firearm.

An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. The purpose of adding the word "knowingly" is to insure that no one will be convicted for an act done because of mistake, accident, or other innocent reason.

United States Requested Instruction No. 4 (Docket # 23).

The government's request for this instruction raises the issue of what mens rea must be proven as an essential element of the offense charged. Section 922(e) only requires proof that the defendant "knowingly ... deliver[ed]" a firearm or ammunition, while section 924(a)(1)(D) requires proof that

the defendant "willfully violate[d]" section 922(e).

Congress amended the Gun Control of Act of 1968 (18 U.S.C. § 922 et seq.) with the enactment of the Firearm Owners Protection Act of 1986 ("FOPA"), 100 Stat. 449 (1986). One section of FOPA added the scienter requirements to section 924(a)(1) that are at issue in this case. Prior to the enactment of FOPA, the only mens rea element applicable to a prosecution under section 922(e) was the "knowingly delivered" element provided in section 922(e) itself. This element could be satisfied by proof that the defendant had "knowingly delivered" a firearm to a common carrier without written notice. *United States v. Udofot,* 711 F.2d 831, 835–37 (8th Cir.1983) *cert. denied,* 464 U.S. 896, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983). The prosecution was not required to prove that the defendant knew that doing so was illegal. *Id.* The question now before the court is whether FOPA's addition of the "willfully violated" element to section 924(a)(1)(D) changes the mens rea element in prosecutions for violations of section 922(e), and if so, what proof will be needed to satisfy the new mens rea element.

Section 924(a)(1)(D) is the only statutory authority for imposing a penalty for a violation of section 922(e), and the prosecution will therefore have to satisfy section 924(a)(1)(D)'s "willful violation" element before criminal sanctions can be imposed on a defendant accused of violating section 922(e). *See e.g. U.S. v. Collins,* 957 F.2d 72, 73 (2nd Cir.1992), *cert. denied,* —— U.S. ——, 112 S.Ct. 2285, 119 L.Ed.2d 210 (1992); *U.S. v. Obiechie,* 825 F.Supp. 1335, 1337 (N.D.Ill. 1993); *5th Cir.Crim. Jury Instr.* 2.42 (1990); Edward J. Devitt and Charles B. Blackmar, *Fed. Jury Prac. and Instr.* § 36.03, 4th Ed.(1990) (all applying section 924(a)(1)(D)'s "willful" element to prosecutions under section 922(a)(1), which is analogous to section 922(e)).

The meaning of the legal term "willful" varies.[1] In federal criminal tax cases "willfulness" requires the government to prove

---

[1]. Perhaps for this reason, some courts now discourage the use of the term "willfully" in jury instructions, while recognizing that the jury must be instructed on the meaning of the term if it is used in a statute relevant to the case. *E.g. 8th Cir. Model Crim. Jury Inst.* § 7.02.

that the defendant knew of a legal duty and voluntarily and intentionally violated it. *Cheek v. U.S.*, 498 U.S. 192, 200–201, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991). In non-tax federal criminal cases, a "willful" act has been variously defined: as any voluntary act, *e.g. U.S. v. Loera*, 923 F.2d 725, 728 (9th Cir.1991) *cert. denied,* —— U.S. ——, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991), as a voluntary act done by one who knows or should know that his act is wrongful, *e.g. U.S. v. Armstrong*, 781 F.2d 700, 706 (9th Cir.1986), and as an act done with the specific intent of violating a known legal duty, *e.g. U.S. v. Wells* 766 F.2d 12, 20 (1st Cir.1985). It has been said that the meaning of "willfully" is determined according to how it is used in a particular statute, and that while it will usually only require proof that the defendant knew what he was doing, it will sometimes also require proof that the defendant knew that what he was doing was illegal. *U.S. v. Shirk*, 981 F.2d 1382, 1390 (3rd. Cir.1992).

When a statute states that it is illegal to "willfully" do a particular act, it may only require proof that the defendant knowingly and intentionally did that act, but when a statute states that it is illegal to "willfully violate" a particular law, it may require proof that the defendant also knew that the act was illegal. *See, Udofot,* 711 F.2d at 836. Here, section 924(a)(1)(D) provides that a criminal penalty can only be imposed on a defendant who "willfully violates" section 922(e). The use of this phrase indicates to the court that the prosecution should be required to prove, as an essential element of the offense, that the defendant in this case knew that it was illegal to check the suitcase containing the firearm and ammunition without first providing written notice to the airline.

This interpretation is further supported by considering section 924(a)(1)(D) in context. FOPA added scienter requirements to several provisions of section 924, including the three subsections immediately preceding 924(a)(1)(D). Subsections (A), (B), and (C) of 924(a)(1) use the term "knowingly" rather than "willfully." If the term "willfully" in subsection (D) is read to require only that the defendant acted knowingly and intentionally, then it will have virtually the same meaning that the term "knowingly" has in subsections (A), (B), and (C). *See* Devitt and Blackmar, *Fed. Jury Prac. and Instr.,* §§ 17.04 and 17.05. However, when Congress uses different language in different subsections of the same statute, it is presumed that the different language was intended to have different meanings. *See Russello v. U.S.,* 464 U.S. 16, 22–23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each"). This is particularly true in this statute, which uses the term "knowingly" in three subsections in a row, and then switches to the term "willfully" in the fourth, evidencing a conscious decision to use a different term to convey a different meaning. The only way to distinguish "willfully" from "knowingly" is to hold that subsection (D) requires proof that the defendant knew of the illegality of his conduct.

Any ambiguity that may remain after considering the text of the statute is resolved by considering the legislative intent behind the statute, as reflected in the legislative history. An exhaustive review of the legislative history of FOPA, including a detailed discussion of the intent of Congress in using the term "willfully" in section 922(a)(1)(D), is presented in David T. Hardy, *The Firearm Owners' Protection Act: A Historical And Legal Perspective* (17 Cumb.L.Rev. 585 (1987)). According to Hardy, there was an extensive dispute over the issue of what level of mens rea should be written into section 924 to govern firearm offenses. One faction, which included the Department of the Treasury, wanted the "knowingly" standard used, to make prosecutions easier. *Id.* at 615–16, 648–51. Another faction, which included the National Rifle Association, wanted the "willfully" standard used, to protect gun owners from being convicted of felonies for actions done with innocent intent. *Id.*

Negotiations between the two factions resulted in the term "knowingly" being used in subsections (A), (B), and (C) of section 924(a)(1), and the term "willfully" being used in subsection (D). *Id.* at 615–16, 648. It appears from various position papers, congressional reports, and debates that the sen-

ators, representatives, and lobbyists on both sides of the issue recognized that the use of the term "willfully" would mean that only an action done with the knowledge that the action is illegal would constitute a violation. *Id.* 615–16, 648–52. Hardy acknowledges that there are some indications in the legislative record to the contrary, but concludes that after reviewing the legislative history as a whole "it is impossible to avoid the conclusion that Congress was fully aware that its use of 'willfully' in FOPA would require proof that the defendant actually knew of the illegality of his acts." *Id.* at 651–52.

The text of the statute and the legislative history both point strongly toward the conclusion that knowledge of illegality is required. Furthermore, to the extent that any ambiguity on this point may remain, the court is obliged to resolve that ambiguity in favor of the accused:

When, as here, a court is faced with two reasonable interpretations of a criminal statute and the congressional intent is ambiguous, the doctrine of lenity requires the court to adopt the less punitive alternative.

*U.S. v. Freisinger,* 937 F.2d 383, 391 (8th Cir.1991) (citing *U.S. v. Bass,* 404 U.S. 336, 346, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971)). Here, the text of the statute and the legislative history indicate that the interpretation more favorable to the defendant is the accurate interpretation, and the rule of lenity simply confirms that even if a reasonable doubt about the statute's meaning were still present, the court would nevertheless have to arrive at the same conclusion.

The Second Circuit Court of Appeals addressed the question of what "willfully" means in section 924(a)(1)(D) in *U.S. v. Collins,* 957 F.2d 72 (2nd Cir.1992). The thrust of the court's analysis in that opinion appears to be that the statute does *not* require proof that the defendant know his actions were illegal, but the legislative history cited by the court seems generally contrary to that view, and the court's ultimate ruling is ambiguous:

[W]e believe that the element of willfulness now contained in § 922(a)(1) was meant to be read broadly to require only that the government prove that the defendant's conduct was knowing and purposeful and that the defendant intended to commit an act which the law forbids.

*Collins,* 957 F.2d at 76. Furthermore, the court goes on to hold that the trial court's error in failing to instruct on "willfulness" was harmless because there was evidence at trial that the defendant "understood that his [actions] violated the law," which established that the defendant had acted "willfully." *Collins,* 957 F.2d at 77. Nevertheless, *Collins* has been cited for the rule that knowledge of illegality is not required under section 924(a)(1)(D). *See U.S. v. Obiechie,* 825 F.Supp. 1335 (N.D.Ill.1993). This court declines to follow *Collins,* as that court did not have available to it Hardy's analysis of the legislative history, did not analyze the term "willful" in the context of the text of the statute, and did not apply the rule of lenity.

It seems possible that a well-intentioned air traveller who wants to transport a firearm for a hunting trip or other lawful purpose, knowing that carrying a firearm into an airliner is forbidden, might innocently decide to pack the firearm into checked baggage, where it would be inaccessible during the flight and therefore pose no threat to the passengers or crew. The need to provide written notice to the airline does not seem so obvious that knowledge of that requirement can simply be assumed in a felony criminal prosecution. Care must be taken to avoid transforming reasonable but mistaken conduct into a felony. Finally, it is Congress, not the courts, that has the authority to define criminal conduct. *Crandon v. U.S.,* 494 U.S. 152, 159, 110 S.Ct. 997, 1002, 108 L.Ed.2d 132 (1990). In this instance the intent of Congress in requiring knowledge of illegality is apparent, and this court does not have the authority to second guess or alter that intention on policy grounds.

Therefore **IT IS ORDERED** that the United States' Requested Instruction No. 4 is **DENIED,** and the United States' Requested Instruction No. 3, stating the elements of the offense, will be **MODIFIED** to include the element of knowledge of illegality.