**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph D. OBIECHIE, Defendant–**
**Appellant.**

Nos. 93–3012, 93–3879.

United States Court of Appeals,
Seventh Circuit.

Argued May 20, 1994.

Decided Oct. 14, 1994.

Barry Rand Elden, Asst. U.S. Atty., James A. Shapiro (argued), Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

John E. Horn (argued), Tinley Park, IL, for defendant-appellant.

Before POSNER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This case turns on the meaning of the term "willfully" in the Firearms Owners' Protection Act of 1986, Pub.L. No. 99–308, 100 Stat. 449 (1986) ("FOPA"). Joseph D. Obiechie was convicted after a bench trial of "willfully" engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A) & 924(a)(1)(D). The district court construed "willfully" in section 924(a)(1)(D) to mean that Obiechie must have intended to do the acts that constitute the crime, but not that he must have known of the law and intended to violate it. *United States v. Obiechie*, 825 F.Supp. 1335, 1338 (N.D.Ill.1993). The district court found that the evidence proved Obiechie guilty beyond a reasonable doubt under that standard. *Id.* at 1338–39. Obiechie argues on appeal that the district court should also have required the government to prove knowledge of section 922(a)(1)(A)'s licensing requirement and his intent to violate it.[1] Because we agree that knowledge of the law is an element of the government's proof under section 922(a)(1)(A), we reverse Obiechie's conviction.

## I. BACKGROUND

Over a period of approximately six months, Obiechie purchased fifty Beretta semiautomatic pistols from Shore Galleries ("Shore") in Lincolnwood, Illinois. The first such purchase occurred on December 3, 1991, when Obiechie arranged to buy a single Beretta for $191.[2] He indicated to the Shore sales clerk that he was purchasing the Beretta for retail sale, and the clerk recorded that purpose on the sales receipt. Obiechie picked up his pistol on December 6, after the expiration of the seventy-two hour waiting period required by state law. On December 7, Obiechie traveled to Nigeria, returning to this country on January 1, 1992.

The next day, Obiechie purchased an additional eight Berettas from Shore, and on April 15, he purchased twenty Berettas and forty boxes of ammunition. Although Obiechie indicated to the Shore clerk on January 2 that he intended to resell the eight pistols, he told the clerk on April 15 that he was purchasing the twenty pistols as gifts. After complying with the three-day waiting period as to each purchase, Obiechie picked up the pistols and flew to Nigeria shortly thereafter.

1. Obiechie also filed a separate appeal from the district court's denial of his motion under 28 U.S.C. § 2255 (No. 93–3879), and we consolidated that appeal with his appeal from the underlying conviction. Obiechie's counsel informed us at oral argument, however, that his client has abandoned the section 2255 appeal because it is completely without merit. Indeed, Obiechie failed even to address the denial of his section 2255 motion in his brief to this court. We therefore dismiss Obiechie's appeal in No. 93–3879.

2. In connection with this purchase, the Shore clerk informed Obiechie that he needed to obtain an Illinois Firearms Owners Identification card and assisted Obiechie in completing his application for the card.

In compliance with federal law, Shore sent the required forms to the United States Bureau of Alcohol, Tobacco and Firearms ("ATF") reflecting Obiechie's multiple firearms purchases following each of these sales. ATF Special Agent Kevin O'Malley called Shore upon receipt of the April 15 forms and requested that Shore notify ATF of any additional purchases by Obiechie.

Obiechie returned to Shore on April 30, 1992, and purchased twenty-one Berettas and forty boxes of ammunition.[3] As he had on April 15, Obiechie told the Shore clerk that he was purchasing the pistols as gifts. Shore immediately notified Agent O'Malley, and when Obiechie returned to pick up the firearms on May 5, ATF Agent Todd Reichert, equipped with a body recorder and transmitter, was working undercover as a Shore sales clerk. In assisting Obiechie, Reichert engaged him in conversation, and Obiechie told the agent that he was from Nigeria and that he was taking the Berettas there the following day. Reichert asked whether it was difficult to import guns into Nigeria, and Obiechie responded that he had ways of doing so. Obiechie also told Reichert that he would sell the pistols to public officials in Nigeria and that he would make a forty percent profit on each sale.

Obiechie then left Shore with the Berettas and ammunition and drove to Chicago. Two Chicago police officers who were assisting in the ATF undercover operation followed Obiechie and eventually stopped his vehicle when it entered the Chicago city limits. Obiechie waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and consented to a search of his vehicle, during which the officers uncovered the Berettas and ammunition. Obiechie admitted to the officers that he had been transporting firearms to Nigeria by stowing them in the bottom of a cargo trunk. He explained that he had been able to avoid detection by Nigerian customs agents by bribing a customs official.

Obiechie was charged in a four-count indictment with willfully engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) (count I), and with willfully exporting or attempting to export firearms and ammunition without a license in violation of 22 U.S.C. § 2778 (counts II, III, and IV). Obiechie waived his right to a jury, and after a three-day bench trial, the district court found Obiechie guilty on count I and not guilty of the remaining charges. On counts II, III, and IV, the district court found that the government had failed to prove beyond a reasonable doubt that Obiechie had willfully violated a known legal duty to refrain from exporting firearms and ammunition without a license as required under section 2778. 825 F.Supp. at 1341–42. The district court held that knowledge of the law was not a necessary element under section 922(a)(1)(A), however, and found that the government had thus shown a willful violation of that section. *Id.* at 1338. Obiechie now challenges that conviction.

## II. DISCUSSION

Section 922(a)(1)(A) makes it unlawful for any person

> except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce....

Standing alone, this statute contains no *scienter* requirement. *United States v. Collins*, 957 F.2d 72, 74 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2285, 119 L.Ed.2d 210 (1992). Such a requirement is instead located in 18 U.S.C. § 924(a)(1), the penalty provision for this and other offenses, which provides:

> (a)(1) Except as otherwise provided in this subsection, subsection (b), (c), or (f) of this section, or in section 929, whoever—
>
> (A) knowingly makes any false statement under this chapter or in applying for any license or exemption or relief

---

**3.** He purchased ten additional boxes of ammunition when he picked up these materials on May 5.

from disability under the provisions of this chapter;·

    (B) knowingly violates subsection (a)(4), (a)(6), (f), (k), or (q) of section 922;

    (C) knowingly imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922(*l*); or

    (D) willfully violates any other provision of this chapter,

shall be fined not more than $5,000, imprisoned not more than five years, or both. It is subsection (a)(1)(D) that applies here, as neither of the others purport to apply to section 922(a)(1)(A), meaning that violations of that section fall under the (a)(1)(D) catchall. *See Collins,* 957 F.2d at 74.

▮ Subsection (D)'s willfulness requirement was added by the FOPA amendments to the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 225 (1968). Prior to FOPA, many firearms crimes, including the unlicensed dealing of firearms, "were, on their face, strict liability offenses." *United States v. Sherbondy,* 865 F.2d 996, 1001 (9th Cir.1988); *see also Collins,* 957 F.2d at 74; *United States v. Carmany,* 901 F.2d 76, 78 n. 2 (7th Cir.1990). As the Ninth Circuit explained in *Sherbondy,* "FOPA added a set of *mens rea* requirements by amending section 924(a)(1) to punish certain violations only if they are committed 'willfully' and others only if they are committed 'knowingly.'" 865 F.2d at 1001. These amendments were intended to ensure that law-abiding citizens would not be subject to severe criminal penalties for unintentional missteps. *See Collins,* 957 F.2d at 74, 76; *see also* David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective,* 17 Cumb.L.Rev. 585, 604–07 (1987);· 131 Cong.Rec. 18,155 & 18,158 (1985) (remarks of Senators McClure and Symms); 132 Cong.Rec. 5,779 (1986) (remarks of Representative Volkmer).

In construing the willfulness requirement in *Collins,* the Second Circuit reviewed FOPA's extensive legislative history and concluded that Congress had intended the term "willfully" "to be read broadly to require only that the government prove that the defendant's conduct was knowing and purposeful

and that the defendant intended to commit an act which the law forbids." 957 F.2d at 76. In the Second Circuit's view, therefore, the government is not required to show knowledge and a conscious disregard of the law. The district court here relied on *Collins'* assessment of the pertinent legislative history to conclude that "willfully" does not connote the intentional violation of a known legal duty. *Obiechie,* 825 F.Supp. at 1337–38.

In a case not cited by either party, the Eighth Circuit considered the same legislative history and reached a contrary conclusion. *See United States v. Hern,* 926 F.2d 764, 767 (8th Cir.1991). In *Hern,* the government had conceded that FOPA's use of the term "willfully" means the "intentional violation of a known legal duty," and the court found FOPA's legislative history "consistent with this definition of 'willful.'" *Id.* at 767 & n. 6; *see also United States v. Langley,* No. 93–5219, 1994 WL 518394, *8 1994 U.S.App. Lexis 26832, *32 (4th Cir. Sept. 23, 1994) (noting in dicta that FOPA's "willfully" requirement "was intended to mean undertaken in violation of a known legal duty."); Hardy, 17 Cumb.L.Rev. at 652 ("it is impossible to avoid the conclusion that Congress was fully aware that its use of 'willfully' in FOPA would require proof that the defendant actually knew of the illegality of his acts."). The fact that our sister circuits have reached divergent conclusions from reading the same legislative history suggests to us that Congress' expression of its intent may have been less than clear. Our own review of FOPA's seven-year history in the two houses of Congress confirms those suspicions. *See* Hardy, 17 Cumb. L.Rev. at 604–27, 647–53 (reviewing history of the various bills that eventually led to the enactment of FOPA); *see also, e.g.,* H.R.Rep. No. 99–495, 99th Cong.2d Sess. 11, *reprinted in* 1986 U.S.C.C.A.N. 1327, 1337 (disagreeing with the "intent of the authors" of the "willfulness" requirement that knowledge of the law should be required); *id.* at 19–20, *reprinted in*· 1986 U.S.C.C.A.N. at 1345–46 (ATF report criticizing inclusion of a "willfulness" requirement in addition to a knowledge requirement because "[w]illfulness may be

interpreted to mean knowledge of the requirements of law and the specific intent to violate legal requirements.").

The conflicting signals sent by FOPA's legislative history are of lesser importance, however, after the Supreme Court's recent decision in *Ratzlaf v. United States,* —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). There, the Court considered Congress' use of the term "willfully" in the federal antistructuring statutes, 31 U.S.C. §§ 5322(a) & 5324(a)(3),[4] and observed at the outset that "willful" is "a 'word of many meanings.'" —— U.S. at ——, 114 S.Ct. at 659 (quoting *Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943)).[5] Yet the multitude of existing interpretations of that term did not lead the Court to consult the statute's legislative history as a means of ascertaining the intended meaning in section 5322(a). The Court explained instead that construction of the term "willful" in a criminal statute " '[is] often ... influenced by its context,' " and the Court therefore determined to review the statutes at issue "mindful of the complex of provisions in which they are embedded." *Id.* (quoting *Spies,* 317 U.S. at 497, 63 S.Ct. at 367). Indeed, later in its opinion, the Court specifically refused to resort to legislative history in construing a statutory text it found to be clear. *Id.,* —— U.S. at ——, 114 S.Ct. at 662.

In considering the context of section 5322(a)'s use of "willfully," *Ratzlaf* focused on section 5324(a)'s requirement that a structuring transaction be undertaken "for the purpose of evading" a bank's reporting requirements. *Id.* at ——, 114 S.Ct. at 659. An interpretation of "willfully" that did not require knowledge of illegality would render the "willfulness" requirement surplusage, the Court found, as section 5322(a) would then add nothing to the offense proscribed in section 5324(a)(3). *Id.* The Court cautioned that statutory language should not be treated as surplusage in any setting, and particularly not "when the words describe an element of a criminal offense." *Id.* (citing *Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 562, 110 S.Ct. 2126, 2132–33, 109 L.Ed.2d 588 (1990); *Potter v. United States,* 155 U.S. 438, 446, 15 S.Ct. 144, 147, 39 L.Ed. 214 (1894)).[6]

█ Our duty under *Ratzlaf,* then, is to construe section 924(a)(1)(D)'s "willfulness"

---

**4.** Section 5324(a)(3) provides that:

> (a) No person shall for the purpose of evading the reporting requirements of section 5313(a) ... with respect to such transaction—
>
> \* \* \* \* \* \*
>
> (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

Section 5322(a), the applicable criminal enforcement provision, prescribes penalties for "[a] person willfully violating" the antistructuring provision.

**5.** In this regard, the Eleventh Circuit recently explained:

> [I]n some contexts, courts have interpreted "willfully" as requiring a finding of general intent, meaning the intent to engage in the prohibited conduct; that is, acting voluntarily, knowingly, and intentionally, and not accidently or mistakenly. Thus, a defendant need not intend to violate the law to commit a general intent crime, but he must actually intend to do the act that the law proscribes. In other circumstances, courts have construed the term "willfully" to require a finding of specific intent, meaning the intent to violate the law; that is, acting with a "bad purpose" to disobey or disregard the law.

*United States v. Phillips,* 19 F.3d 1565, 1576–77 (11th Cir.1994) (citations omitted); *see also* H.R.Rep. No. 99–495, 99th Cong.2d Sess. 26, *reprinted in,* 1986 U.S.C.C.A.N. at 1352 ("[T]he term 'willful' has been construed by the courts in a variety of ways, often inconsistent and contradictory." (internal quotation omitted)).

**6.** The *Ratzlaf* majority also emphasized that section 5322(a) applies to sections other than section 5324(a)(3) and that its willfulness requirement has been read in other contexts "to require both knowledge of the reporting requirement and a specific intent to commit the crime, *i.e.,* a purpose to disobey the law." —— U.S. at ——, 114 S.Ct. at 659 (emphasis in original; internal quotations omitted). The Court believed that the willfulness requirement should be construed "the same way each time it is called into play." *Id.* at ——, 114 S.Ct. at 660. The Court further found that because "currency structuring is not inevitably nefarious," the willfulness requirement cannot be satisfied absent "knowledge of the illegality of structuring." *Id.* at ——––——, 114 S.Ct. at 660–62; *see also United States v. Curran,* 20 F.3d 560, 568 (3d Cir.1994). Finally, even if the willfulness requirement could be regarded as ambiguous, the Court determined to apply the rule of lenity to resolve any doubts in Ratzlaf's favor. *Ratzlaf,* —— U.S. at ——––——, 114 S.Ct. at 662–63.

requirement not by combing FOPA's legislative history for snippets of congressional intent, but by considering the context of the term's use within the overall structure of the statute. *See Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 659; *see also Screws v. United States,* 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945); *United States v. Murdock,* 290 U.S. 389, 395, 54 S.Ct. 223, 225–26, 78 L.Ed. 381 (1933) ("Aid at arriving at the meaning of the word 'willfully' may be afforded by the context in which it is used."); *United States v. Phillips,* 19 F.3d 1565, 1577 (11th Cir.1994). We are mindful in this endeavor of "the venerable principle that ignorance of the law generally is no defense to a criminal charge" (*Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 663; *see also Cheek v. United States,* 498 U.S. 192, 199, 111 S.Ct. 604, 609, 112 L.Ed.2d 617 (1991)), but we also recognize that, at times, "Congress may decree otherwise." *Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 663. In our view, Congress did so here.

In construing subsection (D), we must necessarily turn our attention to the three accompanying penalty provisions. Of section 924(a)(1)'s four subsections, (D) alone requires a willful violation. Subsections (A), (B), and (C) require only that a defendant act "knowingly." Congress' use of the term "willfully" in subsection (D) indicates that it intended a *scienter* standard there that is distinct from the "knowingly" requirement of the previous three subsections. It will therefore aid our construction of the term "willfully" in subsection (D) to first consider the meaning of "knowingly" in the preceding subsections.

In *Sherbondy, supra,* the Ninth Circuit addressed Congress' use of the term "knowingly" in subsection (B). Two professional groups had argued as amicus curiae that the "knowingly" requirement denotes knowledge of the law, rather than only knowledge of the acts or omissions giving rise to the criminal charges. 865 F.2d at 1002. Responding to amici's argument, the Ninth Circuit first explained that there are few exceptions to the general rule that ignorance of the law is no excuse and that courts generally interpret "knowingly" so as not to include knowledge

of the law. *Id.* Yet the court found section 924(a)(1) "more ambiguous than most statutes" because it uses the phrase "knowingly violates" to refer to a specific subsection of the Gun Control Act, "rather than specifying the conduct and attendant circumstances to which 'knowingly' attaches." *Id.* After reviewing the statute's history, however, the Ninth Circuit was convinced that "knowingly" was not intended to encompass knowledge of the law. *Id.* In that regard, the court emphasized that the earliest versions of FOPA had required "willfulness" for all offenses, but that "[t]he Treasury Department, along with various witnesses and members of Congress, [had] objected that, with respect to certain serious offenses, ... the government should not be required to prove intent to violate the law." *Id.; see also Langley,* 1994 WL 518394, at *14 n. 8, 1994 U.S.App. LEXIS 26832, at *21 n. 8; Hardy, 17 Cumb. L.Rev. at 647–48, 650. In response to those objections, Congress "reduced the *mens rea* requirement for the most serious offenses from 'willfully' to 'knowingly,'" and this led the Ninth Circuit to conclude that knowledge of the law is not an element of the government's proof under section 924(a)(1)(B). *Sherbondy,* 865 F.2d at 1002–03. The Eighth Circuit has approved *Sherbondy's* analysis (*see Hern,* 926 F.2d at 966–67 & n. 5; *see also United States v. Toney,* 27 F.3d 1245, 1252 (7th Cir.1994) (citing *Sherbondy* )), and indeed, that decision is consistent with the generally accepted construction of "knowingly" in criminal statutes. *See, e.g., United States v. International Minerals & Chem. Corp.,* 402 U.S. 558, 562–63, 91 S.Ct. 1697, 1700–01, 29 L.Ed.2d 178 (1971) (knowing violation of 18 U.S.C. § 834(f) requires only knowledge of the pertinent facts and not knowledge of the applicable law); *Langley,* 1994 WL 518394, at *9–10, 1994 U.S.App. LEXIS 26832, at *40–41 (knowledge of the law not required under section 924(a)(2)); *United States v. Palmieri,* 21 F.3d 1265, 1273 (3d Cir.1994) ("knowingly" under section 924(a)(2) does not mean knowledge that the defendant was violating the law), *petition for cert. filed* (U.S. Aug. 1, 1994); *United States v. Udofot,* 711 F.2d 831, 835–36 (8th Cir.) ("Congress' use of the word 'knowingly' in a criminal statute aimed at regulating danger-

ous objects does not itself abrogate the ancient maxim that ignorance of the law is no excuse."), *cert. denied,* 464 U.S. 896, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983); *see also United States v. Bailey,* 444 U.S. 394, 405, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1980) (" 'knowledge' corresponds loosely with the concept of general intent").

Yet *Sherbondy* expressed no opinion on the meaning of the companion term "willfully" in section 924(a)(1)(D). *See* 865 F.2d at 1003 n. 9. In *Hern,* by contrast, the Eighth Circuit assumed, along with the parties in that case, that subsection (D)'s use of "willfully" denotes "an intentional violation of a known legal duty," and the court read FOPA's legislative history to support that assumption. 926 F.2d at 764 & n. 6. In reaching the opposite conclusion in *Collins,* the Second Circuit neither discussed *Sherbondy* and *Hern,* nor attempted to differentiate between FOPA's "knowingly" and "willfully" standards. *See* 957 F.2d at 74–76. Indeed, *Collins* failed even to note that FOPA applies a "knowingly" standard to some violations and a "willfully" standard to others. Thus, we are not persuaded by the Second Circuit's analysis, especially in light of *Ratzlaf*'s focus on context and statutory structure, rather than legislative history. *See Ratzlaf,* —— U.S. at ——, ——, 114 S.Ct. at 659, 662.

■ It is clear to us that FOPA's "knowingly" and "willfully" standards were intended by Congress to create different *scienter* requirements for the various sections of the Gun Control Act to which each applies. We agree with *Sherbondy* that "knowingly" in section 924(a)(1) refers only to the intent to do the act that is proscribed by law, as opposed to the intentional violation of a known legal duty. *See Sherbondy,* 865 F.2d at 1001–03; *see also Hern,* 926 F.2d at 766–67. The district court construed "willfully" as having a similar meaning, concluding that knowledge of the law also is not required under subsection (D). *Obiechie,* 825 F.Supp. at 1338. But even the government has acknowledged that Congress would not have established separate *scienter* requirements in adjacent subsections had it intended a uniform standard. *Cf. Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979) ("viable" not synonymous with

"may be viable" in state abortion control statute); *Helvering v. Morgan's Inc.,* 293 U.S. 121, 125 n. 1, 55 S.Ct. 60, 61 n. 1, 79 L.Ed. 232 (1934) (Congress' use of separate terms in definitional sections of a statute suggests distinct meanings). The district court's interpretation fails to give any effect to the differing standards Congress crafted. *See United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955) (if possible, effect must be given to every clause and word in a statute); *United States v. Wagner,* 29 F.3d 264, 266 (7th Cir. 1994) (same).

■ For section 924(a)(1)'s differing standards to have distinct meanings, therefore, "willfully" must mean something more than "knowingly," as the government has conceded. *See* Govt.Br. at 22 n. 17 (" 'Knowingly' is certainly a lesser mental state than 'willfully.' "); *see also Langley,* 1994 WL 518394, at *8, 1994 U.S.App. Lexis 26832, at *32. Yet the government was hard-pressed at oral argument to provide us with any basis for distinguishing the two mental states if knowledge of the law is not an element of a willful violation. The government could only suggest that the term "willfully" may require actual knowledge of the facts constituting the offense, whereas "knowingly" would include as well the "ostrich" defendant who deliberately disregards or consciously avoids those facts. (*See* Govt.Br. at 22 n. 17 (citing *United States v. Hester,* 880 F.2d 799, 802 (4th Cir.1989)). Yet such a distinction is not apparent from the context of the "willfully" requirement or from "the complex of provisions in which [it is] embedded." *Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 659. The government's proposed distinction also finds no support in FOPA's legislative history, which shows that Congress was concerned only with whether or not knowledge of the law was required to establish a violation. *See* Hardy, 17 Cumb.L.Rev. at 651–52 & n. 363. In our view, the only reasonable distinction between section 924(a)(1)'s "knowingly" and "willfully" standards is that the latter requires knowledge of the law. *See, e.g., Cheek,* 498 U.S. at 201, 111 S.Ct. at 610 ("willfulness" refers to the "voluntary, intentional violation of a known legal duty"); *see also Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 663. The district court's application of a

lesser *scienter* standard compels us to reverse Obiechie's conviction.

■ Because it held that knowledge of the law was not required, the district court did not consider whether the government had produced evidence that would establish Obiechie's knowledge of section 922(a)(1)(A)'s licensing requirement. The court intimated, however, that an inference of knowledge could be drawn from the fact that Obiechie had listed "gift" as his reason for purchasing the Berettas on April 15 and April 30, after having indicated that the first two purchases were for retail sale. 825 F.Supp. at 1341 ("It could reasonably be inferred that defendant realized it was illegal for an unlicensed person to sell firearms for a profit and, therefore, he changed the receipts for his subsequent purchases from 'sale' to 'gift.' "). The government has not pointed to any additional evidence that would support this inference, choosing instead to confine its arguments to the legal question Obiechie raises. Rather than considering the issue without the benefit of the district court's views or of briefing by the parties, we shall remand to the district court for a determination of whether the government has satisfied the "willfulness" burden articulated here.[7]

REVERSED AND REMANDED.

7. Because we do not remand for a new trial,

Circuit Rule 36, by its terms, does not apply.