United States Court of Appeals,

Eleventh Circuit.

No. 94-4363.

UNITED STATES of America, Plaintiff-Appellee,

v.

Francisco SANCHEZ-CORCINO, Defendant-Appellant.

June 17, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-456-CR), Jacob Mishler, Visiting Judge.

Before TJOFLAT, Chief Judge, and RONEY and PHILLIPS[*], Senior Circuit Judges.

PHILLIPS, Senior Circuit Judge:

After a jury trial, Francisco Sanchez-Corcino (Sanchez) was convicted of one count of engaging in the business of dealing in firearms without a license, 18 U.S.C. §§ 922(a)(1)(A) (Supp.1996), 924(a)(1)(D) (Supp.1996) (Count 1), and of nine counts of making false statements with respect to information required to be kept on file by licensed firearms dealers, 18 U.S.C. § 924(a)(1)(A) (Supp.1996) (Counts 2 through 10). Sanchez appeals his convictions on all counts, as well as his sentence. As to Count 1, Sanchez claims that the district court erred in failing to instruct the jury that, in order to find that Sanchez "willfully" sold guns without a license, it had to conclude that Sanchez knew of the licensing requirement he was accused of violating. Because we agree that § 924(a)(1)(D)'s "willfulness" standard requires proof that the defendant knew of the licensing requirement and,

[*]Honorable J. Dickson Phillips, Jr., Senior U.S. Circuit Judge for the Fourth Circuit, sitting by designation.

nonetheless, intentionally violated it, we reverse Sanchez's conviction on Count 1 and remand it to the district court for a new trial. We affirm all of Sanchez's other convictions and their accompanying sentences.

## I.

Between April and September of 1993, Sanchez bought more than 150 handguns from two licensed firearms dealers in Miami. He purchased the guns in nine separate transactions, the first seven at Miami Police Supply Store, the last two at 27th Avenue Pawn Shop.

Each time he bought guns, Sanchez filled out an Alcohol, Tobacco, and Firearms (ATF) Form 4473. This form required Sanchez to give his name, date of birth, and other basic personal information, including his "Residence Address." On each form, Sanchez gave his correct name and biographical data, and he listed his address as 236 N.W. 24th Avenue, Miami, Florida.

After having purchased seven sets of handguns at Miami Police Supply Store, Sanchez began patronizing 27th Avenue Pawn, where, on his first visit, he bought twenty more guns. In connection with this sale, the store owner completed and sent to the ATF a "multiple gun purchase" form, which the ATF requires licensed sellers to complete whenever they sell more than one firearm in a single transaction. An ATF agent later called the owner and asked him to notify the ATF if Sanchez returned to the store. When Sanchez did return, he ordered thirteen more guns, and the owner, as promised, notified the ATF. ATF Agent Foster then set up surveillance outside the store. A few days later, Sanchez returned

and picked up the thirteen guns; Agent Foster then arrested him.

The men drove to the ATF station where, after having been properly advised of his rights, Sanchez told ATF agents about his weapons activity. He then signed a written statement in which he admitted having purchased and resold at least 140 handguns. Also in this statement, Sanchez explained that he had begun buying guns for resale because he was unemployed and needed money. In describing his sales activities, Sanchez explained that he did not purchase the guns with specific buyers in mind, but that after he bought the guns, potential buyers would contact him via his beeper. He then would meet the buyers, whom he identified only as "latin males," in Miami's "Little Havana" district, where he would sell them the guns.

As to the address he used on the 4473 Forms, Sanchez explained that, although he had not lived at 236 N.W. 24th Avenue for about eight months, he had given that as his address for two reasons. First, it was the address on the Florida identification card he presented when he made the purchases, and, second, he had not yet established another permanent address.

A few days after the arrest, a grand jury returned a ten-count indictment against Sanchez. Count 1 charged him with engaging in the business of selling firearms without a license, a violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D). Counts 2 through 10 charged him with making false statements with respect to information required to be kept by licensed firearms sellers, in violation of 18 U.S.C. § 924(a)(1)(A). More specifically, these latter counts alleged that each time Sanchez filled out an ATF Form

4473, he knowingly gave a false residence address.  Sanchez pleaded not guilty to all counts.

At trial, the Government presented the above-described evidence regarding Sanchez's purchase and resale of the handguns, including Sanchez's own signed statement to the ATF.  It also presented testimony aimed at showing that, at the time he purchased the guns, Sanchez did not live at 236 N.W. 24th Avenue.

At the close of the Government's case, and again at the close of all the evidence, Sanchez's attorney moved for a judgment of acquittal.  As to Count 1, Sanchez's counsel argued that the Government had failed to prove that Sanchez had "willfully" engaged in the business of selling firearms without a license, as required by 18 U.S.C. § 924(a)(1)(D).  More specifically, he argued that "there is no evidence by which a jury could rationally conclude that Francisco Sanchez was aware of the licensing requirements and that he sold these guns with the specific intent of circumventing or somehow violating that known legal duty."  The district court denied Sanchez's motion as to Count 1, noting that Sanchez's "surreptitious[ ]" use of a beeper suggested that "he knew he was in an illegal business."  The court similarly denied Sanchez's Rule 29 motion with respect to Counts 2 through 10.

Then at the charge conference, the parties and the court again presented their conflicting positions on the meaning of willfulness under § 924(a)(1)(D).  The defense argued that

> it's not sufficient if the government simply proves that this man knew of the generally unlawful nature of his conduct.  The government must prove above and beyond that that he knew about the licensing requirement and willfully violated that provision.

The Government disagreed, asking the court to instruct that "the government is not required to prove the defendant was aware of the licensing requirement." The court ultimately rejected the defense's suggestion, concluding instead "the government must show ... that in conducting his business [Sanchez] was aware he was in an illegal business." Both parties conformed their closing arguments to the district court's chosen "willfulness" definition.

In its jury instructions, the court described the elements of Count 1 as follows:

> [T]he government must prove the following three essential elements beyond a reasonable doubt. One, that the defendant Sanchez engaged in the business of dealing in firearms. Two, the defendant Sanchez was not then a federally licensed firearms dealer. *Three, the defendant Sanchez acted willfully.*

(Emphasis added). The court then defined "willfully":

> The word "willfully" ... means that the act was committed voluntarily and purposely with the specific intent to do something the law forbids. That is, with bad purpose either to disobey or disregard the law. The government must prove beyond a reasonable doubt that Sanchez was in the business of dealing in firearms and that he was aware that his conduct was illegal and that he deliberately conducted the business of dealing in firearms.

The jury convicted Sanchez on all counts. Sanchez was sentenced to thirty-three months' imprisonment and three years of supervised release on each count, all sentences to run concurrently. Sanchez now appeals his convictions and sentences, contending first that the district court erred in rejecting his proposed jury instruction on the "willfully" *scienter* requirement of Count 1. Sanchez also contests the admission of his signed statement, some aspects of the Government's closing argument, and his sentence.

II.

We first address whether the district court erred in instructing the jury on the "willfulness" element of the unlicensed sale of firearms offense charged in Count 1, and conclude that the court did so err, and that the error requires vacatur of Sanchez's conviction on Count 1.

As we have had occasion to note, "willfully" is a word of many meanings and each usage of the word must be interpreted with reference to the statutory context in which it appears. *United States v. Phillips,* 19 F.3d 1565, 1576 (11th Cir.1994) (citing *Ratzlaf v. United States,* 510 U.S. 135, ----, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994)), *cert. denied* --- U.S. ----, 115 S.Ct. 1312, 131 L.Ed.2d 194 (1995); *see also United States v. Obiechie,* 38 F.3d 309, 313-14 (7th Cir.1994) ( *Ratzlaf* requires court to construe "willfully" as used in § 924(a)(1)(D) with reference to its statutory context); *United States v. Hayden,* 64 F.3d 126, 132 n. 9 (3d Cir.1995) (same). Accordingly, we must first identify the context in which the "willfully" requirement is used in the statutory provisions under which Sanchez was charged in Count 1.

The word does not appear in 18 U.S.C. § 922(a)(1)(A), the subsection which directly prohibits any person other than a licensed dealer from dealing in firearms. That subsection in fact contains no *mens rea* requirement. Instead, § 924(a)(1)(D) supplies the applicable *mens rea* requirement for § 922(a)(1)(A)'s "dealing without a license" offense. While subsections 924(a)(1)(A) through (C) require that certain violations of §§ 922 and 924 be committed "knowingly," subsection 924(a)(1)(D) is a catch-all provision that

specifies a different *mens rea* for all other violations of the chapter: "Whoever ... *willfully* violates any other provision of this chapter...." Because no other provision of § 924(a)(1) specifically applies to the violation of § 922(a)(1)(A)—with which Sanchez is charged—the "willfully" requirement of the catch-all § 924(a)(1)(D) applies here. *Obiechie,* 38 F.3d at 312; *United States v. Collins,* 957 F.2d 72, 74 (2d Cir.), *cert. denied* 504 U.S. 944, 112 S.Ct. 2285, 119 L.Ed.2d 210 (1992).

Thus, the context within which subsection (D)'s "willfully" requirement must be interpreted includes the other subsections—(A) through (C)—of § 924(a)(1). The Seventh Circuit interpreted subsection (D)'s willfully requirement in light of these other subsections in *Obiechie.* Pointing out that subsections (A) through (C) specify "knowingly" as the *scienter* requirement for the offenses to which they apply, while only subsection (D) specifies "willfully", the court reasoned that "knowingly" must therefore be contrasted with and shape the meaning of "willfully." Then, further noting that the "knowingly" standard does not require knowledge of the law, but only that the defendant intended to do the act that is proscribed by law, the *Obiechie* court concluded that because "willfully" must signify a higher *mens rea* standard than "knowingly," it must necessarily require knowledge of the law. *Obiechie,* 38 F.3d at 315 (must mean an "intentional violation of a *known* duty") (emphasis added); *accord Hayden,* 64 F.3d at 130 ("[I]t is difficult to understand what more the "willfully' language could require, if not knowledge of the law."); *United States v. Hern,* 926 F.2d 764, 767 (8th Cir.1991) (assuming that

"willfully" in § 924(a)(1)(D) means "intentional violation of a known legal duty").

We agree with the reasoning and result in *Obiechie*.[1] Accordingly, we too conclude that in order for the Government to prove the offense of willfully dealing in firearms without a license under §§ 922(a)(1)(A) and 924(a)(1)(D), it must prove that the defendant acted with knowledge of the licensing requirement. In doing so, we do not ignore "the venerable principle that ignorance of the law is no excuse," *Ratzlaf,* 510 U.S. at ----, 114 S.Ct. at 663, but simply recognize that "Congress may decree otherwise," *see id.,* and conclude that it has done so in § 924(a)(1)(D).[2]

---

[1]In agreeing with the Seventh Circuit, we necessarily disagree with the Second Circuit's contrary interpretation of § 924(a)(1)(D) in *Collins.* In *Collins,* the Second Circuit, without noting the "willfully" requirement's statutory context, looked straight to the statute's legislative history to guide its interpretation. Based on its reading of the legislative history, the Second Circuit concluded that the willfulness requirement did not contemplate knowledge of the law, but required the Government to prove only that "the defendant intended to commit an act which the law forbids." *Collins,* 957 F.2d at 76. This analysis ignores the effect of Congress's use of "knowingly" in the adjacent subsections of the statute on the meaning of "willfully" in § 924(a)(1)(D), a point that, as did the *Obiechie* court, we think is critical to a proper interpretation.

[2]Although we re-emphasize that the meaning of "willfully" always must be ascertained with reference to the specific statutory language in which it appears, we note that our understanding of that term as it is used in § 924(a)(1)(D) is consistent with our understanding of how "willfully" is used in other statutes. *See, e.g., United States v. Macko,* 994 F.2d 1526, 1532-33 (11th Cir.1993) ("willfully" in Trading with the Enemy Act requires proof that defendants knew of and intentionally violated embargo); *United States v. Adames,* 878 F.2d 1374, 1377 (11th Cir.1989); *United States v. Frade,* 709 F.2d 1387, 1391 (11th Cir.1983) (" "[W]illfully' ... generally connotes a voluntary, intentional violation of a known legal duty.").

In so holding, we wish to avoid raising more questions than we answer. Jury confusion in applying various *mens rea* standards—particularly the appropriate "willfulness" standard—may often reflect imprecision in appellate courts' formulations of those standards which then are embodied in correspondingly imprecise jury instructions. With that in mind, we will attempt concreteness here. To prove a willful violation of § 922(a)(1)(A), the Government must prove that a defendant (1) knew that he was required to have a license in order to deal in firearms, (2) knew that he did not have the requisite license, and (3) nonetheless voluntarily, intentionally engaged in the business of dealing in firearms, knowing that such conduct violated the licensing requirement.

There remains the question whether, though without this degree of precision, the district court's instruction here sufficiently conveyed the essence of this formulation of the willfulness requirement.

After listing the other elements of a § 922(a)(1)(A) violation, the district court defined "willfully" as follows:

> The word "willfully" ... means that the act was committed voluntarily and purposely with the specific intent to do something the law forbids. That is, with bad purpose either to disobey or disregard the law. The government must prove beyond a reasonable doubt that Sanchez was in the business of dealing in firearms and that he was aware that his conduct was illegal and that he deliberately conducted the business of dealing in firearms.

Although much of this definition comes from some of this court's definitions of "willfully" as it is used in other statutes, *see, e.g., Phillips,* 19 F.3d at 1577 ("Willfully" can mean acting with "a "bad purpose' to disobey or disregard the law"), we conclude

that it does not suffice as an instruction on the offense at issue here. Critically, the instruction would have allowed the jury to convict Sanchez without ever having concluded that he knew of the licensing requirement. While the instruction does require proof that Sanchez knew "his conduct was illegal," this is not enough. Knowledge of the general illegality of one's conduct is not the same as knowledge that one is violating a specific rule—here, the prohibition against unlicensed dealing in firearms.[3] *See Adames,* 878 F.2d at 1377 (defendant's awareness of generally unlawful nature of her actions cannot sustain finding of specific intent). Accordingly, we conclude that the instruction did not communicate the correct understanding of § 924(a)(1)(D)'s scienter requirement. By permitting the jury to convict Sanchez without finding the required form of willfulness in his conduct, it necessarily prejudiced his defense so that vacatur of his conviction and remand for a new trial is required as to Count 1.[4] *See Ratzlaf,* 510 U.S.

---

[3]For example, a seller may know that his dealing in firearms is illegal because he is a convicted felon and, as such, may not even possess a firearm. *See* 18 U.S.C. § 922(g)(1) (Supp.1996). However, such a seller—if he did not also know that he was required to have a license to conduct his firearms business—would not be guilty of a willful violation of § 922(a)(1)(A), even though he was aware that his firearms dealings were illegal.

[4]Sanchez sought reversal and dismissal of this count for insufficiency of the evidence to convict him under a proper application of § 922(a)(1)(A) or, "at least, for a new trial." Remand for a new trial is the appropriate remedy where, as here, the insufficiency of evidence is accompanied by trial court error whose effect may have been to deprive the Government of an opportunity or incentive to present evidence that might have supplied the deficiency. *See Lockhart v. Nelson,* 488 U.S. 33, 42, 109 S.Ct. 285, 291-292, 102 L.Ed.2d 265 (1988) (remand for new trial proper where erroneous admission of evidence may have deterred Government from presenting other evidence that could have supplied deficiency); *United States v. Weems,* 49 F.3d 528 (9th Cir.1995) (remand for new trial where erroneous jury

at ----, 114 S.Ct. at 663.

## III.

Sanchez also argues that his conviction on Count 1 should be vacated because the Government based its proof that he sold any guns at all entirely on his own confession, which, he claims, was not corroborated by any other evidence. In view of our vacatur and remand of this count on other grounds for a new trial in which additional evidence may be presented, we will not address this assignment of error.

## IV.

Sanchez also claims that certain of the Government's statements in its rebuttal closing argument violated his due process and rule-based rights and, accordingly, require a reversal of his convictions on all counts. First, he claims that the Government grossly distorted the facts in evidence. Second, he contends that the Government's rebuttal closing violated Fed.R.Crim.P. 29.1 because it did not merely respond to the defense's closing, but introduced a new theory of the case. We have carefully reviewed the challenged portions of the Government's rebuttal closing and find no merit in these claims of error. The

---

instructions made missing evidence not apparently necessary); *United States v. Wacker,* 72 F.3d 1453 (10th Cir.1995) (same).

Such situations are different from those in which the insufficiency of evidence is inexplicable for any reason other than that it was not available or that, if available, it was not produced by the Government. In the latter situations, the Double Jeopardy Clause requires dismissal to protect against the Government oppression that would result from allowing a "second bite" when the first bite was a full and fair one. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

prosecutor was well within the bounds of propriety in arguing to the jury that the most reasonable inference from the evidence of Sanchez's impecunious state was that prospective purchasers from him were fronting the money for his gun purchases, at odds with his statement to Government agents that he financed the purchases without any prior arrangements for resale.  The argument was a proper attack on the credibility of Sanchez's contrary account to the agents.  Nor was there any violation of Rule 29.1, which confines the scope of any argument by the Government in reply to defense closing argument to that which does "rebut."  Sanchez's contention is that the Government's rebuttal closing which raised for the first time the "fronted-purchases" argument violated this scope restriction.  But it did not, being properly responsive to defense counsel's closing argument that Sanchez was unaware of any illegality in what he was doing.  *See United States v. Sarmiento,* 744 F.2d 755, 765 (11th Cir.1984) (Rule 29.1 does not prevent the introduction of new theories in rebuttal so long as they are responsive to defense closing).

V.

Finally, Sanchez contests the district court's failure to reduce his offense level by two points for "acceptance of responsibility" under U.S.S.G. § 3E1.1.  Because we have vacated Sanchez's conviction on Count 1, we will consider his sentencing arguments only as they relate to his convictions for making false statements on ATF forms, Counts 2 through 10.

"The district court's determination of whether a defendant is entitled to a reduction for acceptance of responsibility is a

finding of fact that is entitled to great deference on appeal and will not be disturbed unless clearly erroneous." *United States v. Kendrick,* 22 F.3d 1066, 1068 (11th Cir.1994); *United States v. Chukwura,* 5 F.3d 1420, 1424 (11th Cir.1993), *cert. denied* --- U.S. ----, 115 S.Ct. 102, 130 L.Ed.2d 51 (1994); *see* U.S.S.G. § 3E1.1 app. note 5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility"). Because we find no clear error here, we affirm the district court's denial of the § 3E1.1 reduction.

In explaining his denial of Sanchez's requested reduction, the district court noted "I went over the objections [to the PSI], and I agree with the Government that the defendant is not entitled" to the § 3E1.1 reduction. We interpret this statement as an adoption of the Government's reasoning in its Response in Opposition to Defendant's Objections to the Presentence Report (Response), which was filed on the day of the sentencing hearing. In the Response, the Government pointed out that Sanchez had not, in his signed statement or otherwise, admitted that he knew he was acting illegally. Instead, Sanchez had "put the government to its burden of proof at trial" by contesting the crucial factual element of his intent as to all charges. *See* § 3E1.1 app. note 2 ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt....") Indeed, Sanchez maintained throughout the trial that he had never intentionally lied on the 4473 Forms, but that his use of a "residence address" where he no longer lived was due to the form's vagueness. Thus, the Government

concluded that Sanchez's statement to the ATF and his arguments at trial were inconsistent with acceptance of responsibility.

The district court implicitly adopted this reasoning in denying Sanchez's requested reduction for acceptance of responsibility. Because we cannot say that this was clear error, we affirm Sanchez's sentence as to Counts 2 through 10.

## VI.

Having found that the district court's erroneous instruction as to the "willfulness" element of § 922(a)(1)(A) constituted reversible error, we vacate Sanchez's conviction and sentence on Count 1 and remand that count for a new trial. We affirm his convictions and sentences on all other counts.

AFFIRMED in part; VACATED and REMANDED in part FOR NEW TRIAL.